UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NOBLE ROMAN'S, INC.,<br>   Plaintiff,<br><br> vs.<br><br>FRENCH BAGUETTE, LLC, J. PEACEFUL,<br>L.C., and HABIB GEORGES CHAMI,<br>   Defendant. | 1:07-cv-1176-LJM-JMS |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

This matter comes before the Court on defendants', Habib Georges Chami ("Chami") and J. Peaceful, L.C. ("J. Peaceful"), Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state upon which relief can be granted.  Plaintiff, Noble Roman's, Inc. ("Noble Roman's"), asserts claims against Chami, J. Peaceful, and defendant French Baguette, LLC ("French Baguette") (collectively, "Defendants"), alleging trademark infringement, unfair competition, breach of contract, and defamation per se.  The Court rules as follows.

### I. BACKGROUND

### A. PROCEDURAL HISTORY

Noble Roman's original Complaint asserted claims against only J. Peaceful and French Baguette for trademark infringement, unfair competition, and breach of contract. Dkt. No. 1.  J. Peaceful and French Baguette moved to dismiss the original Complaint for

lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Dkt. No. 12. The Court denied their motion. Dkt. No. 16.

As to personal jurisdiction, the Court concluded that J. Peaceful and French Baguette had sufficient minimum contacts with Indiana to support specific jurisdiction over a suit involving a franchise agreement they had entered into with Noble Roman's, an Indiana corporation. Moreover, the Court concluded that forcing J. Peaceful and French Baguette to litigate in Indiana would not violate traditional notions of fair play and substantial justice. As to venue, the Court held that the Southern District of Indiana was the proper venue because J. Peaceful and French Baguette were subject to personal jurisdiction in this district when Noble Roman's filed this suit. Finally, the Court concluded that Noble Roman's was entitled to more discovery on the relationship between J. Peaceful and French Baguette. Importantly, the Court applied the "no set of facts" standard that the Supreme Court has since rejected. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007).

J. Peaceful and French Baguette appealed the Court's decision to the Seventh Circuit Court of Appeals. However, the Seventh Circuit dismissed the appeal, citing lack of appellate jurisdiction. Dkt. No. 26.

On September 16, 2009, Noble Roman's moved the Court for leave to file an Amended Complaint. The Court granted Noble Roman's motion, and Noble Roman's Amended Complaint added Chami as a defendant and asserted an additional claim of defamation per se. Chami now moves the Court to dismiss Noble Roman's claims against him, arguing that this Court does not have personal jurisdiction over him. J. Peaceful reasserts its motion to dismiss for failure to state a claim upon which relief can be granted.

2

## B. FACTUAL BACKGROUND

For the purposes of these motions, the Court accepts the following factual allegations in the Amended Complaint as true:

Noble Roman's is an Indiana corporation in the business of franchising the operation of Noble Roman's Pizza Express franchises that feature pizza, breadsticks, and other related food items to various franchisees throughout the world. Am. Compl. ¶¶ 1-2. Noble Roman's registered its trademark on the Principal Register of the United States Patent and Trademark Office under registration number 098069. *Id.* ¶ 3. J. Peaceful is a Florida limited liability company with its principal address located at 7770 Preserve Lange in Naples, Florida (the "Location"). *Id.* ¶ 4. J. Peaceful owns the real estate upon which the Location sits. *Id.* ¶ 5. French Baguette is also a Florida limited liability company, and it operates and manages the food court at the Location. *Id.* ¶ 6. Chami and Laima Chami are the only two members of J. Peaceful and French Baguette. *Id.* ¶¶ 4, 6. Both are citizens of the State of Florida. *Id.* Chami is the managing member and president of J. Peaceful. *Id.* ¶ 9.

In May 2001, Noble Roman's executed a five-year Franchise Agreement (the "Franchise Agreement") with J. Peaceful for the operation of a Noble Roman's Pizza Express franchise at the Location. *Id.* ¶ 15, Ex. 2. The terms of a January 29, 2001, facsimile from Chami to Noble Roman's were incorporated into the Franchise Agreement. *Id.* ¶ 17, Ex. 4. On May 25, 2001, J. Peaceful transferred and assigned all of its rights and responsibilities under the Franchise Agreement to French Baguette. *Id.* ¶ 16, Ex. 3. Noble Roman's, French Baguette, and Chami, in his individual capacity, executed a Confidentiality Agreement. *Id.* ¶ 18, Ex. 5.

The Franchise Agreement stated that upon its termination, French Baguette was required to cease operation of its Noble Roman's Pizza Express franchise and thereafter forbidden to "hold itself out as a present or former [Noble Roman's] frachisee[.]" *Id.* Ex. 2 at 24. French Baguette was also forbidden to "use, in any manner whatsoever . . . the mark 'Noble Roman's®' . . . and all other Marks and distinctive forms, slogans, signs, symbols, and devices associated with the [Noble Roman's Pizza Express] system." *Id.*

French Baguette terminated the Franchise Agreement in January 2004, prior to the expiration of the five-year term. *Id.* ¶ 27. In an April 21, 2004, letter, Noble Roman's acknowledged the termination and reminded Chami and French Baguette of their obligation under the Franchise Agreement to "return to Noble Roman's, at [their] expense, any items, including but not limited to signage . . . containing the Noble Roman's logo." *Id.*, Ex. 6. According to the Complaint, "Defendants" failed to remove signage bearing the Noble Roman's® trademark at the Location. *Id.* ¶ 28. In addition, "Defendants . . . also have either sold pizza by the slice or leased space to a business selling fresh-baked pizza at the Location since June 2003." *Id.*

On August 15, 2007, Noble Roman's area developer, Edward Mitrani ("Mitrani"), visited the Location and observed that the Noble Roman's trademark logo was displayed in at least two places. *Id.* ¶ 29, Ex. 7 ¶¶ 3-6. In addition, Mitrani observed evidence of the sale of fresh baked pizza at the Location. *Id.* ¶ 30, Ex. 7 ¶ 4. On August 24, 2007, Noble Roman's sent a letter to Chami and French Baguette, demanding that they "immediately cease using the Noble Roman's registered trademark and permanently" remove trademarked materials from the Location. *Id.* ¶ 31, Ex. 8. French Baguette removed the signs bearing the Noble Roman's® trademark from the Location. *Id.* ¶ 32.

4

On April 24, 2009, Chami created and posted the website www.noblesux.com (the "Website") on the Internet. *Id.* ¶ 33, Ex. 9. According to the Complaint, the Website "contains false and defamatory statements." *Id.* ¶ 34. The "contact" link on the Website provides Chami's email address. *Id.* ¶ 35.

Noble Roman's contends that it has been damaged by Defendants' trademark infringement, unfair competition, breach of contract, and defamatory statements. *Id.* ¶¶ 30, 34, 39, 46.

## II. MOTION TO DISMISS STANDARD

In considering a motion advanced under Rule 12(b), the Court examines the sufficiency of the plaintiff's complaint as opposed to the merits of the lawsuit, and directs dismissal only if it appears to a certainty that the plaintiff can establish no basis for asserting personal jurisdiction. The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff bearing on personal jurisdiction. Yet, if a complaint consists of conclusory allegations unsupported by facts, it fails even under the liberal standards of Rule 12(b).

Rule 12(b)(2) permits the dismissal of a claim for lack of jurisdiction over the person or entity. Fed. R. Civ. P. 12(b)(2). In considering a Rule 12(b)(2) motion to dismiss, the Court reviews any affidavits and other documentary evidence that have been filed, as long as factual disputes are resolved in favor of the non-movant–in this case, Noble Roman's. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990). Because, here, the issue of personal jurisdiction will be determined in the absence of an evidentiary hearing, Noble Roman's need only make a *prima facie* showing that Chami is subject to

personal jurisdiction. *See Purdue Research Found. v. Sanofi-Syntheloabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

Rule 12(b)(6) permits the dismissal of a claim for failure of the pleadings to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a plaintiff's complaint may not merely state "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009). Rather, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Id.*

"[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Brooks*, 578 F.3d at 581 (internal quotation marks omitted). "[T]he height of the pleading requirement is relative to the circumstances[,]" *Cooney v. Rossiter*, No. 08-3675, 2009 WL 3103998, at *3 (7th Cir. Sep. 30, 2009), and "[determining the plausibility of a claim is a context-specific task that requires [the Court] to draw on [its] judicial experience and common sense." *Brown v. JP Morgan Chase Bank*, No. 08-1890, 2009 WL 1761101, at * 1 (7th Cir. June 23, 2009).

### III. **DISCUSSION**

### A.  **PERSONAL JURISDICTION**

Chami argues that this Court lack personal jurisdiction over him.  A federal district court exercising diversity jurisdiction over the subject matter of an action has personal jurisdiction only if a court of the state in which it sits would have such jurisdiction.  *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).  Because federal courts are courts of limited jurisdiction, Noble Roman's must prove that personal jurisdiction over Defendants exists, if there is a challenge to it, by establishing a *prima facie* case that jurisdiction is proper.  *See Purdue Research Found*, 338 F.3d at 782-83.

A determination of personal jurisdiction involves two steps.  First, the Court must determine whether the state's "long-arm jurisdiction" statute allows jurisdiction and, second, whether the exercise of jurisdiction comports with due process.  *NUCOR Corp. v. Aceros Y Maquilos De Occidente, S.A.*, 28 F.3d 572, 580 (7th Cir. 1994).  Indiana's jurisdiction statute is Indiana Trial Rule 4.4 (A) ("Trial Rule 4.4(A)").  Trial Rule 4.4(A) designates eight bases for a defendant's contacts that would allow the Court to move to the constitutional inquiry.  Ind. Tr. R. 4.4 (A).  Trial Rule 4.4(A) was amended effective January 1, 2003, to include the following: "[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  Thus, this Court has personal jurisdiction over Defendants to the limit allowed by the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause requires that a non-resident defendant have "certain minimum contacts with [Indiana] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction under Trial Rule 4.4(A) may be either general or specific. *See Alpha Tau Omega v. Pure Country, Inc.*, 185 F. Supp. 2d 951, 956 (S.D. Ind. 2002). General jurisdiction makes a non-resident defendant amenable to suit within a particular forum regardless of the subject matter of the suit, based on a defendant's continuous and systematic contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Noble Roman's does not contend that Chami should be subject to general jurisdiction in Indiana.

Specific jurisdiction makes a non-resident defendant amenable only to suits arising out of or related to its contacts with the particular forum. *Id.* at 414. Specific jurisdiction may be based on relatively modest contacts with the forum if they have a substantial connection to the plaintiff's action. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985).

For specific jurisdiction, due process requires that a non-resident defendant must have established his contacts with the forum state by purposefully availing himself of the privilege of conducting business there. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). In other words, the defendant's conduct and connection with the forum state should be such that he should reasonably anticipate being haled into court there. *See Burger King*, 471 U.S. at 474. It must be the activity of Chami in the forum state that creates jurisdiction, not the conduct of Noble Roman's or a third party. *See Purdue Research Found.*, 338 F.3d at 780.

With respect to the first part of that analysis, Noble Roman's contends that Chami's conduct fell under the "doing business" clause of Indiana's long-arm statute, which states:

> Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:
>
> (1) doing business in this state[.]

Ind. T.R. 4.4(A)(1). Noble Roman's claims Chami subjected himself to personal jurisdiction of Indiana's courts by entering into and executing the Confidentiality Agreement. The Court agrees.

By entering into and executing the Confidentiality Agreement, Chami personally availed himself of the privilege of conducting business in Indiana. *See Burger King*, 471 U.S. at 473. Chami deliberately entered into a multi-year contractual business relationship with Noble Roman's, an Indiana Corporation, and in return received confidential information, trade secrets, and specialized training from Noble Roman's. Am. Compl. Ex. 5 at 1. Chami agreed not to compete with Noble Roman's after the termination of the business relationship, which is the basis of Noble Roman's breach of contract claim against Chami. Chami's contacts with Indiana were purposeful rather than random or fortuitous, and they gave him fair warning that he could be subject to suit in Indiana arising from those contacts. *Id.* ("[W]e have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.") (quoting *Travelers Health Ass'n v. Vifginia*, 339 U.S. 643, 647 (1950)); *Woodmar Coin Center, Inc. v. Owen*, 447 N.E.2d 618, 621 (Ind. Ct. App. 1983) (stating that defendant "purposely

availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident.").

Moreover, Chami's allegedly defamatory statements on the Website create sufficient minimum contacts. The parties disagree about the relevant standard. Chami focuses on case law regarding commercial internet sites and their relative interactivity. *See, e.g.*, *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550-51 (7th Cir. 2004). However, this case does not deal with injury resulting from the purchase of products or services through a website. *See id.* Rather, Noble Roman's asserts Chami committed an intentional tort against it and that Chami's behavior created minimum contacts with Indiana because the effects of Chami's intentional tort were felt in Indiana. Thus, this case is more in line with *Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (holding California's courts had personal jurisdiction over nonresident defendants from Florida because California was the focal point of both the libelous newspaper article written by defendants and the harm suffered by the plaintiff). The fact that Chami used a different medium to express his allegedly defamatory remarks than did the defendants in *Calder* does not make the Court's analysis any different. "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State" such that the defendant "should reasonably anticipate being haled into court" in Indiana. *Burger King*, 471 U.S. at 474.

Here, taking the allegations in the Amended Complaint as true, Chami's website contains several defamatory comments about Noble Roman's that, in turn, damaged Noble Roman's goodwill and reputation by imputing misconduct in Noble Roman's trade, profession, office, and occupation, namely the sale of pizza franchises. Am. Compl. ¶ 46. There can be no doubt that Chami knew his actions were directed toward Indiana. Through

his dealings with Noble Roman's, including the execution of the Confidentiality Agreement, Chami knew Noble Roman's was an Indiana corporation. Chami mentioned the state of Indiana at least three times on his website, and referred to an article from the *Indianapolis Star*. Chami directed his false statements, in part, to potential future Noble Roman's franchisees, persuading them to not enter into franchise agreements with Noble Roman's. A reasonable person in Chami's position would know that his actions would be felt most in Indiana, the home state of Noble Roman's. Therefore, the Court concludes that Chami should have reasonably anticipated being haled into court in Indiana as a result of his tortious behavior. *Calder*, 465 U.S. at 788-89; *Burger King*, 471 U.S. at 474.

Accordingly, the Court concludes that Chami has sufficient minimum contacts with Indiana. Therefore, to avoid jurisdiction Chami must make a compelling case that forcing him to litigate in Indiana would violate traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476. Chami has failed to submit evidence that demonstrates forcing him to litigate in this judicial district would violate traditional notions of fair play and substantial justice. As this Court said in regard to J. Peaceful and French Baguette's motion to dismiss, "[t]hough it is always somewhat burdensome to defend a lawsuit away from home, it is not a burden that violates due process in this instance." Dkt. No. 16 at 8. *See Burger King*, 471 U.S. at 474 (explaining that modern transportation and communications mean it is usually not unfair or too burdensome to require a party to defend itself in a state where it engages in economic activity); *see also Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with

nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas.").

Chami would not suffer a significantly greater burden in defending this suit here. Further, Noble Roman's, an Indiana corporation, has an interest in obtaining convenient and effective relief. *See Burger King*, 471 U.S. at 482-83. In light of the substantial connection between Noble Roman's claim and Chami's purposeful contacts with this forum, and the lack of prejudice to Chami in appearing here, this Court may exercise personal jurisdiction over Chami in this action.

### B.  CLAIMS AGAINST J. PEACEFUL

Noble Roman's Amended Complaint asserts a claim for trademark infringement, unfair competition, and breach of contract against all three defendants, including J. Peaceful.  J. Peaceful argues that the Amended Complaint fails to state a claim against it upon which relief can be granted.  The Court agrees.

First, Noble Roman's admits in its Complaint that J. Peaceful assigned all rights and responsibilities under the Franchise Agreement to French Baguette.  Am. Compl. ¶ 13, Ex. 3.  Also, J. Peaceful was not a party to the Confidentiality agreement.  *Id.* Ex. 5.  Whatever liability J. Peaceful may have had under the Franchise Agreement before its assignment to French Baguette is of no consequence.

It appears to the Court that Noble Roman's seeks to assert its breach of contract claim under a theory that J. Peaceful is somehow affiliated with French Baguette.  The Court has given Noble Roman's the opportunity to discover facts that would suggest it has a plausible claim for relief against J. Peaceful.  Noble Roman's merely asserts that Chami is

a member of both J. Peaceful and French Baguette, and that J. Peaceful sold pizza at the Location after French Baguette leased the Location to J. Peaceful. This makes little sense considering the Amended Complaint's allegation that J. Peaceful owns the property at issue. Am. Compl. ¶¶ 5, 7. Noble Roman's version of the underlying facts is likewise undercut by its August 27, 2007, letter to Chami and French Baguette. The subject matter of the letter is the post-termination sale of pizzas at the Location, the actions for which Noble Roman's now attempts to hold J. Peaceful responsible, yet the letter was not addressed to J. Peaceful. Am. Compl. Ex. 8. The Court concludes that Noble Roman's has failed to assert a breach of contract claim against J. Peaceful.

Noble Roman's claims for trademark infringement and unfair competition fail for the same reasons. Those claims depend on J. Peaceful's operation of a pizza restaurant under a lease from French Baguette. However, as discussed above, the record before the Court undercuts these allegations, and the Complaint fails to otherwise allege that J. Peaceful somehow used Noble Roman's trademark and competed unfairly with Noble Roman's. Therefore, Noble Roman's has failed to state a plausible claim for trademark infringement and unfair competition. *Iqbal*, 129 S.Ct. at 1949 ("[A] complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570)).

## IV. CONCLUSION

For the foregoing reasons, defendant's, Habib Georges Chami, Motion to Dismiss (Dkt. No. 67) is **DENIED**. Defendant's, J. Peaceful, L.C., Motion to Dismiss (Dkt. No. 66) is **GRANTED**. Plaintiff's, Noble Roman's, claims against defendant J. Peaceful, L.C. are **DISMISSED**.

IT IS SO ORDERED this 21st day of January, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Peyton Louis Berg
BOSE MCKINNEY & EVANS, LLP
pberg@boselaw.com

S. Andrew Burns
COX SARGEANT & BURNS PC
aburns@coxsargelaw.com

Suzanna K. Hartzell-Baird
BOSE MCKINNEY & EVANS, LLP
SHartzell-Baird@boselaw.com